## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

QUEST DIAGNOSTICS,
      Plaintiff,

      v.

TALIB BOMANI and GANIM, GANIM &
GANIM, P.C.,
      Defendants.

No. 3:11cv951 (MPS)

## RULING AND ORDER

Plaintiff Quest Diagnostics, Inc. ("Quest") brings this one-count action to enforce a right-of-recovery provision in its benefit plan under § 502(a)(3)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). In 2006, Defendant Talib Bomani was injured in a bicycle accident. Quest asserts that its health care plan paid medical claims relating to Mr. Bomani's injuries totaling $21,306.10. Later, Mr. Bomani sued the third party who was allegedly liable for his injuries in Connecticut state court and settled the action for $250,000. Quest alleges that an express provision in its benefit plan requires Mr. Bomani to reimburse the plan for the $21,306.10 in claims paid. Ganim, Ganim & Ganim—the firm representing Mr. Bomani and a co-Defendant in this action—currently holds the disputed amount in escrow.

This introductory summary of the facts will sound familiar to followers of the U.S. Supreme Court's docket. The Court just decided a similar case. In *U.S. Airways, Inc. v. McCutchen*, an employer providing a self-funded health benefits plan to its employees brought an ERISA § 502(a)(3) suit against a plan beneficiary who was injured in a car accident, received medical treatment paid for by the plan, and later recovered money from an insurer and the driver responsible for the crash. 133 S. Ct. 1537, 1543 (2013). The employer brought suit claiming that a reimbursement clause in the plan obligated the employee to pay the plan "any monies

recovered from [the] third party." *Id.* at 1543.  Like Defendants here, the beneficiary-defendant contended that, in an action under ERISA § 502(a)(3), he was entitled to raise equitable defenses that would trump the plain terms of the reimbursement provision.  *Id.* at 1545.  The Supreme Court rejected this argument and held that neither of the equitable defenses asserted—the double-recovery and common-fund rules—can "override the clear terms of a plan." *Id.* at 1543. The *McCutchen* Court concluded, however, that an ambiguity in the plan about the proper allocation of attorney's fees left "space for the common-fund rule to operate." *Id.* at 1549.  The reimbursement provision stated that the employer had first claim on "any monies recovered from [the] third party," and the Supreme Court found "recovered" to be ambiguous in that it could refer to a "recovery to which [the employer] has first claim [to] every cent the third party paid or, instead, the money the beneficiary took away [after subtracting the costs of recovery, including attorney's fees]."  *Id.* at 1549-50. In light of this ambiguity, the Supreme Court reasoned that "the common-fund rule informs interpretation of [the] reimbursement provision," and construed "recovered" to refer to the beneficiary's net recovery, after subtracting attorney's fees.  *Id.* at 1551.  In short, the Supreme Court held that equitable principles cannot override *unambiguous* language in an ERISA plan but may be relevant to interpreting a plan provision that is *ambiguous*.

This case is essentially *McCutchen* in all material respects save one: Unlike the plan in *McCutchen*, the plain language of the plan in this case is unambiguous, leaving no room for equitable defenses to operate.  Before *McCutchen* was decided, the parties here filed cross motions for summary judgment, the merits of which turn largely on questions that are expressly or impliedly answered by *McCutchen*.  As discussed in more detail below, the Court grants Quest's motion for summary judgment because the terms of the plan are clear and foreclose the

application of the equitable defenses asserted by Defendants and because Defendants' remaining arguments are not sufficiently supported by evidence in the record.  The Court also denies as moot Defendants' motions for summary judgment, which raise largely the same issues as Defendants' opposition brief and which introduce no additional evidence that would affect the Court's decision.

## I.  Background

The following facts are culled from the parties' Local Rule 56(a) Statements, affidavits, and exhibits.  The Court presents all facts "in the light most favorable to the nonmoving party"— here, Defendants[1]—after drawing "all reasonable inferences in [her] favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted).  Additional facts are discussed in the analysis as necessary.

Quest is a sponsor and fiduciary of an "employee welfare benefit plan" as that term is defined in 29 U.S.C. § 1002 (the "Plan").  The Plan provides medical benefits to participating Quest employees from employee contributions and Quest's general funds.  (Pl.'s Local Rule 56(a)(1) Statement [Dkt. # 68] ¶ 1.)  The Plan sets forth in plain language that it has a right to recover the money it has paid to a beneficiary if that beneficiary receives compensation from a third party liable for the injury.  This provision states as follows:

> **Recovery of Benefits Paid**
> You or a covered dependent may incur expenses for a condition or injury, such as from a car accident or Workers' Compensation, for which someone else is legally responsible to pay. If your medical plan pays claims for any condition or injury for which a third party (which may be an individual, a company or an insurer) is

---

[1] Although there are cross motions for summary judgment, the Court addresses Quest's motion first.  As discussed below, Quest's motion is granted.  And because Defendants' motions for summary judgment rehash the same arguments raised in opposition to Quest's motion, the Court then denies Defendants' motions as moot.  In light of this approach, the Court treats Defendants as the non-movants with respect to the evidence in the record.

liable, the medical plan reserves the right to recover the money it has paid. This means that if you or your dependent recover funds from a third party as a result of a judgment, settlement or otherwise, you are responsible for reimbursing the medical plan for 100% of the amounts paid by the medical plan on your or your dependent's behalf. The medical plan has the first right to reimbursement and a priority over the funds you recover from the third party, regardless of how those funds are designated and regardless of whether you or your dependent have been made whole.

If you or your dependent receive funds from the third party and do not promptly reimburse your medical plan, future benefits may be reduced to cover the amount of the required reimbursement. The medical plan also has the right to bring legal action to enforce its reimbursement right.

(*Id.* ¶ 2.)[2]

Quest hired Mr. Bomani as a phlebotomist in 2000.  (Ganim Aff., Ex. C to Defs.' Opp'n [Dkt. # 72] ¶ 3.)   And from 2006 through 2008—the time period relevant to this case—Mr. Bomani remained a Quest employee and a participant of the Plan, and he enrolled in the Aetna HMO option under the Plan.  (Pl.'s Local Rule 56(a)(1) Statement ¶¶ 3, 11.)

During the relevant time period, all of the benefits provided by the Plan were self-funded—i.e., Quest paid the medical claims itself, and none of the health benefits paid to Plan members were funded by an insurance contract.  (*Id.* ¶ 10.)[3]  This is true of the coverage

---

[2] Defendants deny that the quoted language is found in the "plan document" but do not offer any support for their denial.  Local Rule 56(a)(3) states that "each denial in an opponent's Local Rule 56(a)(2) Statement . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3).  The rule expressly warns of the consequences that may attend any failure to abide by its requirements: "Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)(1) or in the Court imposing sanctions, including . . . an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law."  *Id.*  As Defendants disregard the requirements of the rule, providing only one citation to the record among its many denials (*see* Defs.' Local Rule 56(a)(2) Statement [Dkt. # 74] ¶ 5), the Court deems that Paragraphs 2, 10, 11, 12, 14, and 15 of Quest's Local Rule 56(a)(1) Statement are admitted.

[3] *See supra* note 2 (deeming paragraph 10 admitted).

option chosen by Mr. Bomani—Aetna HMO Coverage.  (*Id.* ¶ 11.)[4]  As the Plan document states: "Effective January 1, 2006, the Aetna HMO changed from an insured plan to a self-insured plan and the benefits under that program were standardized."  (*Id.*; Ex. A to Glover Decl. [Dkt. # 51-2].)  The Plan contracted with Aetna to provide administrative services to the Plan.  (Pl.'s Local Rule 56(a)(1) Statement ¶ 12.)  Under this arrangement, Aetna administered the Plan, but Quest paid the claims.  (*Id.*; *see also* Form 5500, Exs. B, C to Glover Aff. (listing Aetna as "Contract Administrator").)  In its role as Contract Administrator for the Plan, Aetna initiated recovery actions like the present suit, enlisting the services of The Rawlings Company, LLC ("Rawlings"), which received a percentage of the recovered funds as compensation for its services.  (*Id.* ¶¶ 14-15.)[5]

On June 19, 2006, Mr. Bomani was injured after a vehicle ran him off the road while he was riding his bicycle.  (*Id.* ¶ 4;  Ganim Aff. ¶ 4.)  The Plan paid $21,246.80 for Mr. Bomani's medical treatment for the injuries he sustained in the accident.  (*See* Pl.'s Local Rule 56(a)(1) Statement ¶ 5; Ex. A to Glover Aff. [Dkt. # 69].)[6]

In 2008, Mr. Bomani brought a civil action based on the 2006 accident.   (Pl.'s Local Rule 56(a)(1) Statement ¶ 6.)  Ganim, Ganim, & Ganim represented Mr. Bomani in the suit,

---

[4] *See supra* note 2 (deeming paragraphs 11 and 12 admitted).

[5] *See supra* note 2 (deeming paragraphs 14 and 15 admitted).  As Rawlings prosecutes recovery actions based on a percentage of the funds recovered, none of the Plan's funds have been expended to pursue the present lawsuit.  (*See* Pl.'s Local Rule 56(a)(1) Statement ¶ 15.)  The remainder of the recovery is remitted to the Plan.  (*Id.*)

[6] As Defendants correctly note, the list of medical charges includes one charge from 2005 for $59.30.  (Ex. A to Glover Aff. [Dkt. # 69].)  This payment, which predates the accident, cannot possibly be treatment for Mr. Bomani's injuries from the accident, and the $59.30 should therefore be subtracted from $21,306.10—the total amount paid by the Plan—leaving $21,246.80 of medical expenses related to the injury for which the third party was liable.  This is the amount recoverable under the terms of Plan that limit Quest's reimbursement right to "expenses . . . for which someone else is legally responsible to pay." (*See* Pl.'s Local Rule 56(a)(1) Statement ¶ 2.)

which was filed in Connecticut state court.  (*Id.*)  After Mr. Bomani obtained a $250,000 settlement from the suit, Quest demanded that the Plan be reimbursed from the settlement for what it spent on Mr. Bomani's medical care.  (*See id.* ¶¶ 7-8.)  Mr. Bomani refused, and Ganim, Ganim, & Ganim holds the disputed portion of the settlement in escrow.  (*Id.* ¶ 9.)

## II.     Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party—here, Quest—bears the burden of demonstrating that no genuine issue exists as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ."  *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (alterations and internal quotation marks omitted).

If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

## III.    Discussion

ERISA  § 502(a)(3)(B)(ii) provides that a "civil action may be brought" by a plan "fiduciary . . . to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan."  In *McCutchen*, the Supreme Court reaffirmed its holding in *Sereboff v. Mid Atlantic*

6

*Medical Services, Inc.*, 547 U.S. 356, 369 (2006), that a health-plan administrator may bring suit under ERISA § 502(a)(3)(B)(ii) to enforce a reimbursement provision like the one at issue here, because such relief is "the modern-day equivalent of an action in equity to enforce such a contract-based lien—called an 'equitable lien by agreement.'"  *McCutchen*, 133 S. Ct. at 1545 (quoting *Sereboff*, 547 U.S. at 364-65).

Quest meets the basic requirements for obtaining relief under ERISA § 502(a)(3)— namely, that Quest is a (1) "fiduciary" that is (2) seeking "appropriate equitable relief" (3) "to enforce the terms of the plan."  ERISA § 502(a)(3)(B)(ii).  First, Quest is an ERISA fiduciary, as Defendants acknowledge.  (Defs.' Opp'n [Dkt. # 72] at 19.)  Second, as in *Sereboff* and *McCutchen*, the requested relief is "equitable" within the meaning of ERISA § 502(a)(3) because seeking to enforce the "Recovery of Benefits Paid" clause in the Plan is equivalent to bringing "an action [in a court of equity] to enforce an equitable lien . . . by agreement."  *Sereboff*, 547 U.S. at 368; *McCutchen*, 133 S. Ct. at 1547.  (*See also* Am. Compl. [Dkt. # 36] ¶ 18, Prayer for Relief (requesting a declaratory judgment and restitution).)  Third, as the "Recovery of Benefits Paid" clause in the Plan provides that Mr. Bomani was "responsible for reimbursing the medical plan for 100% of the amounts paid by the medical plan" on his behalf, and as Mr. Bomani failed to perform his obligations, Quest was empowered as plan fiduciary to bring suit "to enforce . . . the terms of the plan."  ERISA § 502(a)(3)(B)(ii).

Defendants argue that Quest's claim does not qualify as "*appropriate* equitable relief" under ERISA § 502(a)(3) because Mr. Bomani's harm from the accident exceeded his recovery in contravention of the make-whole doctrine, which provides that an insurer may not enforce its reimbursement or subrogation rights until the insured has been fully compensated for his injuries, i.e., has been made whole.  (Defs.' Opp'n at 14-16.)  But the terms of the Plan unambiguously

foreclose the application of the make-whole doctrine.   With respect to the make-whole doctrine—a variant of the double-recovery doctrine, *see Cavanagh v. N. New England Ben. Trust*, 12-CV-394-LM, 2013 WL 2285203, at \*2 (D.N.H. May 23, 2013) (citing *McCutchen*, 133 S. Ct. at 1546)—the Plan states as follows:   "The medical plan has the first right to reimbursement and a priority over the funds you recover from the third party, . . . *regardless of whether you or your dependent have been made whole*."   (Pl.'s Local Rule 56(a)(1) Statement ¶ 2 (emphasis added).)[7]

Defendants offer an array of additional arguments, only four of which merit discussion. First, citing the Third Circuit decision that was vacated by *McCutchen*, Defendants argue that

---

[7] Although not squarely raised by Defendants in their briefing, the Court will also consider whether the common-fund doctrine—which provides that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," *McCutchen*, 133 S. Ct. at 1545—should apply, as the question was discussed at oral argument and in light of *McCutchen*'s treatment of the issue.  The Plan states "that if you [i.e., Mr. Bomani]. . . recover funds from a third party as a result of a judgment, settlement or otherwise, you are responsible for reimbursing the medical plan *for 100% of the amounts paid by the medical plan on your . . . behalf*."  (Pl.'s Local Rule 56(a)(1) Statement ¶ 2 (emphasis added).)  Unlike in *McCutchen*, this language is unambiguous: the occurrence of a third-party recovery triggers a beneficiary's responsibility to pay for "100% of the amounts paid by the medical plan."  Because the language is clear, it controls and leaves no space for the common-fund doctrine to operate.  Further, the *McCutchen* Court's concern about discouraging injured parties from seeking compensation is less prominent in this case, because Mr. Bomani secured a settlement that, even after his attorneys' fees are deducted, easily exceeds the amount he owes the Plan.  *Cf. McCutchen*, 133 S. Ct. at 1550-51 (noting that, absent operation of the "common-fund rule," "in some cases—indeed in this case—the beneficiary is made worse off by pursuing a third party . . . . [W]e doubt if even [Plan Sponsor] US Airways would want [that result].  When the next McCutchen comes along, he is not likely to relieve US Airways of the costs of recovery").  Nor is the Court required to confront the question of how this provision of the Plan would operate if the debt owed to the Plan exceeded the amount secured from the third party. The Court notes, however, that the equitable cause of action recognized in *Sereboff*—that is, an action to enforce an "equitable lien by agreement"—appears to be limited to targeting amounts actually secured by the beneficiary from the third party and would not appear to permit a straight breach-of-contract cause of action for the entire amount owed to the extent such an amount exceeded the funds obtained from the third party.  *See Sereboff*, 547 U.S. at 363-65.

even if Quest otherwise satisfies the requirements of ERISA § 502(a)(3), its claim fails as the requested relief would not be "appropriate" because Quest would receive a windfall recovery and "equity abhors a windfall." (Defs.' Opp'n at 16-17.) Whatever the merits of these arguments when Defendants filed their opposition brief, they are no longer valid in the wake of the Supreme Court's decision in *McCutchen*. *See McCutchen*, 133 S. Ct. at 1551 ("[I]n an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern. Neither general principles of unjust enrichment nor specific doctrines reflecting those principles—such as the double-recovery or common-fund rules—can override the applicable contract.").

Second, Defendants argue that relief "may" be barred by the "unclean hands" doctrine. (Defs.' Opp'n at 18-24.) This argument fails as well. To begin with, the record does not contain sufficient competent evidence to create a triable issue on the defense. The "unclean hands" doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Defendants therefore have the burden of establishing Quest's "inequitableness or bad faith relative to the matter in which [it] seeks relief." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009). Nearly all of the complained-of conduct relates to Quest's and Rawlings's actions in discovery.[8] None of the supposed misconduct rises to the level of inequitableness or bad faith, and, in any event, Defendants' complaints would more properly have been raised in motions to compel under Rule

---

[8] Defendants also identify supposed misconduct committed by Rawlings before the lawsuit, stating that Rawlings failed to respond to Defendants' requests for documents. (Defs.' Opp'n at 19.) Even assuming that the Court can impute Rawlings' behavior to Quest, the conduct alleged does not come remotely close to the type of inequitableness or bad faith that would justify the application of the "clean hands" doctrine.

37 of Federal Rules of Civil Procedure.  Defendants' attempts to manufacture an "unclean hands" defense fail for lack of competent evidence in the record from which a reasonable factfinder could conclude that Quest acted with bad faith.

In addition, Defendants' "unclean hands" defense appears precluded by the core logic of *McCutchen*.  Although the holding in *McCutchen* is addressed to a subset of equitable defenses—namely, defenses within the unjust-enrichment genus—the Supreme Court's reasoning sweeps more broadly to include all equitable defenses.  The key portion of the reasoning in *McCutchen* emphasizes the paramount importance to the statutory scheme of enforcing plan terms as written:

> [Section 502(a)(3)] does not, after all, authorize 'appropriate equitable relief' *at large* . . . ; rather, it countenances only such relief as will enforce "the terms of the plan" or the statute . . . . That limitation reflects ERISA's principal function: to protect contractually defined benefits . . . .  The statutory scheme, we have often noted, is built around reliance on the face of written plan documents. . . . The plan, in short, is at the center of ERISA. And precluding [the plaintiff's] *equitable defenses* from overriding plain contract terms helps it to remain there.

*McCutchen*, 133 S. Ct. at 1548 (first emphasis in original, second emphasis added, and internal quotation marks and citations omitted).  In essence, Defendants seek to assert a federal common law defense that runs counter to a central purpose of the statute "to protect contractually defined benefits."  *Id.*; *accord Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 837 (8th Cir. 2007) ("[W]e generally adopt new rules of federal common law only if they are necessary to fill gaps left by the express provisions of ERISA and to effectuate the purposes of the statute.").  Even if Defendants had made a showing that Quest's actions were inequitable and taken in bad faith, Defendants have failed to convince the Court that recognizing an "unclean hands" defense that would trump the clear language of the Plan is

necessary to fill a gap in ERISA and would further ERISA's purposes.  *See Shank*, 800 F.3d at 837.

Third, Defendants contend that the reimbursement clause comes from the summary plan description ("SPD") rather than the actual plan document.  This argument founders first on Defendants' failure to comply with the Local Rule 56(a)(3).  (*See supra* note 2.)  As a result of this failure, the Court deemed paragraph 2 of Plaintiff's Local Rule 56(a)(2) Statement admitted, and for the purposes of resolving Quest's motion for summary judgment, the Plan thus contains the right-to-recovery clause. (Pl.'s Local Rule 56(a)(1) Statement ¶ 2.)[9]  But this line of argument would fail even if the document—which Quest asserts is simultaneously the "plan document" and SPD—were actually just the SPD.  (*See* Glover Decl. [Dkt. # 51-1] ¶ 5 (stating that the attached document "serves as both the [SPD] and the ERISA plan document").)  Even if this were so, the SPD nevertheless serves as evidence of what the actual plan documents say and by introducing it, Quest meets its initial burden under Rule 56 of the Federal Rules of Civil Procedure.  It falls to Defendants to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" about whether there is a discrepancy between the

---

[9] Even absent this deemed admission, the Court would conclude on the basis of the record that Defendants have failed to demonstrate that a genuine dispute exists that the document introduced by Quest as the "plan document" was not, in fact, the ERISA plan document during the relevant time period.  (*See* Glover Decl. [Dkt. # 51-1] ¶ 5.)  This conclusion is unaffected by the language identified by Defendants in the Administration section of Quest's benefit handbook stating that "[i]f there is a discrepancy between the information contained in this Handbook and the actual Plan Documents, the Plan Document governs."  (Defs.' Opp'n at 14; Ex. D to Glover Aff. at I-3.)  The Second Circuit has held that a program summary with similar disclaimers was nevertheless a plan during a period in which the summary was the only written document.  *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002) ("[W]e reject the notion that this disclaimer renders the Program Summary a non-plan during the period when it was the only written document describing benefits.").

SPD and the ERISA plan documents.  *See Brown*, 654 F.3d at 358.[10]  Defendants offer nothing and therefore fail to demonstrate that a triable issue exists as to whether the Plan contains the reimbursement provision embodied in the "Recovery of Benefits Paid" clause, quoted above.

Finally, Defendants claim that Quest's reimbursement claim is barred by Connecticut's anti-subrogation statute, Conn. Gen. Stat. § 52-225c.  This statute prohibits insurers from pursuing recovery from third-party tort settlements, and Defendants are correct that if Mr. Bomani's health plan was insured—as opposed to self-funded—then ERISA's savings clause would apply and Conn. Gen. Stat. § 52-225c could operate to bar the reimbursement sought here. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("An insurance company that insures a plan remains an insurer for purposes of state laws 'purporting to regulate insurance' after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation.").  But the Plan is self-funded, and none of the benefits paid to Plan members, including Mr. Bomani, were funded by a contract of insurance for which premiums were paid to a health insurer.  (Pl.'s Local Rule 56(a)(1) Statement ¶ 10; *supra* note 2 (deeming paragraph 10

---

[10] As part of their argument that the proffered document is an SPD and not the ERISA "plan document," Defendants submitted a letter to the Court dated May 5, 2013, citing *Wilson v. Walgreen Income Protection Plan for Pharmacists and Registered Nurses, Walgreen Co.*, 6:12-cv-0047-ORL-19DAB, 2013 WL 1799599 (M.D. Fla. Apr. 29, 2013).  In their letter, Defendants quote *Wilson* as follows: "Here . . . a review of the SPD reveals that it does not conform to all the requirements of section 1102(b). Accordingly, the SPD cannot be 'the plan instrument' by which a fiduciary is named under Section 1102(a)."  Letter dated May 5, 2013 (quoting *Wilson*, 2013 WL 1799599, at *32-33).  As presented, this quote suggests that the district court based its conclusion that the SPD was not a plan instrument *solely* on the fact that the SPD did not conform to the requirements of 29 U.S.C. § 1102(b).  It turns out, however, that *Wilson* does no such thing, and that the portion quoted is misleading only because of a creative and transformative ellipsis.  The full quote is as follows: "Here, [the corporate representative for Walgreens, who worked with the company's ERISA plans,] clearly testified that the SPD did not 'establish' the plan at issue in this litigation, and a review of the SPD reveals that it does not conform to all the requirements of section 1102(b). Accordingly, the SPD cannot be 'the plan instrument' by which a fiduciary is named under Section 1102(a)."  *Wilson*, 2013 WL 1799599, at *32-33.  Unlike here, there was evidence in *Wilson* that the SPD was distinct from the ERISA plan.

admitted); *see also* Rule 26(f) Report [Dkt. # 33] at 5 ("The Plan is an employee welfare benefits plan governed by ERISA that is funded by contributions from both Quest and the participating employees.").)[11]   And because the Plan is self-funded, Conn. Gen. Stat. § 52-225c is preempted under ERISA.   As the Supreme Court observed, ERISA's "deemer clause . . . exempt[s] self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause. . . . As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the plans."   *FMC Corp.*, 498 U.S. at 61.

## IV.    Conclusion

For the reasons stated above, Quest's Motion for Summary Judgment [Dkt. # 66] is GRANTED.   Quest is entitled to judgment on Count One of its Amended Complaint [Dkt. # 36] in the amount of $21,246.80.   Defendants' Motions for Summary Judgment [Dkt. # 38, 60] are DENIED as moot.[12]   The Court will not enter final judgment, however, as Defendants have filed a Counterclaim [Dkt. # 77].   Quest shall file its responsive pleading within fourteen (14) days of this Ruling and Order.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              June 19th, 2013

---

[11] The fact that Mr. Bomani enrolled in the Aetna HMO under the plan does not change this analysis. There is no genuine dispute that the Aetna HMO was self-insured during the relevant time period. Defendants have offered no evidence to counter the evidence submitted by Quest. (*See* Pl.'s Local Rule 56(a)(1) Statement ¶ 11; *supra* note 2.)

[12] Defendants' motions for summary judgment present largely the same arguments and evidence that they raise in opposition to Quest's motion for summary judgment. These motions fail for the same reasons that Quest's motion succeeds.